IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ELRICA J. BROWN,                              )<br>                                                          )<br>                                                          ) CIVIL ACTION NO. 0:06-1721-JFA-BM<br>                    Plaintiff,                       )<br>                                                          )<br>v.                                                       )     **REPORT AND RECOMMENDATION**<br>                                                          )<br>MICHAEL J. ASTRUE,[1]                     )<br>COMMISSIONER OF SOCIAL       )<br>SECURITY,                                        )<br>                                                          )<br>                    Defendant.                    )<br>_____)| |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on June 25, 2003, alleging disability as of August 16, 2002 due to anxiety, depression, acid reflux disease, compulsive disorder, hallucinations and crying spells. (R.pp. 45-48, 56). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



was held on October 19, 2005. (R.pp. 275-296). The ALJ thereafter denied Plaintiff's claim in a decision issued January 6, 2006. (R.pp. 12-22). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-6).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.



"[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was twenty-seven (27) years old when she alleges her disability began, has a high school education with three years of technical college, and past relevant work experience as a data entry clerk, salad bar preparer, and sales clerk. (R.pp. 22, 45, 57, 61, 74). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform any of her past relevant work, she nevertheless retained the residual functional capacity to perform a limited range of medium work[2], and was therefore not disabled. (R.pp. 21-22).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give proper weight and consideration to the medical opinion of Plaintiff's primary treating mental health physician, Dr. Roger Davis, and by failing to include all of the appropriate limitations in his questioning of the vocational witness. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the

---

[2]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

The ALJ found in his decision that Plaintiff suffers from anxiety and obesity, impairments which were "severe" within the meaning of the Social Security regulations. However, he did not find that either of these impairments was disabling. Plaintiff's main argument for a finding of disability is that her treating psychiatrist, Dr. Davis (whom Plaintiff did not begin seeing until August 2003, a year after her alleged disability onset date), opined in June 2004 and again in January 2005 that Plaintiff was totally disabled and unable to work. (R.pp. 125, 127). However, the ALJ did not accept this opinion. After reviewing Dr. Davis' medical records and notes as well as the other medical evidence in the file, the ALJ found that Dr. Davis' notes include very few observations or objectively demonstrated symptoms to substantiate the severity of Plaintiff's reported symptoms, and that his opinion appeared to be based wholly on the Plaintiff's subjective complaints. As such, he gave Dr. Davis' opinion little weight. (R.pp. 17-19, 21). After careful review of the record and decision in this case, and as discussed hereinbelow, the undersigned does not find any reversible error in the ALJ's treatment and consideration of Dr. Davis' opinion and medical records.

Plaintiff's original treating physician was Dr. Richard Alexander. He prescribed Zoloft (an anti-depressant) for the Plaintiff, which generally (although not universally) achieved good results for Plaintiff's complaints of stress and anxiety. (R.pp. 172-183). Dr. Alexander also referred Plaintiff to Marianne McIver, RN, CNS, for counseling. Plaintiff reported to McIver that she was experiencing stress at work, but although she exhibited a depressed mood, McIver found that Plaintiff's thought process was normal and goal directed. (R.pp. 159-161). In November 2002,

4



Plaintiff told McIver that she was looking for another job after she had been placed on a medical leave of absence because she became upset with her supervisor. (R.p. 158).

McIver completed a functional capacity evaluation for the Plaintiff on January 15, 2003 in which she found that Plaintiff had no impairment in her personal habits or her ability to perform repetitive tasks; a mild impairment (defined as "slight importance which does not affect functional ability") in her ability to understand, carry out and remember instructions, and to perform tasks involving minimal intellectual effort; that Plaintiff was moderately impaired (defined as effecting but not precluding ability to function) in her ability to perform daily activities (such as ability to attend meetings and socializing with others), perform work where contact with others will be minimal, perform intellectually complex tasks requiring high levels of reasoning, math and language skills, and otherwise perform varied tasks; and that Plaintiff was moderately severely impaired (defined as significantly affecting ability to function) in her ability to relate to other people, constriction of interests, respond appropriately to supervision, perform work requiring regular contact with others, make independent judgment, or supervise or manage others. McIver believed that Plaintiff was severely impaired in her ability to perform under stress or in situations in which working speed and sustained attention are "make or break" aspects of the job. (R.p. 143).

It was Dr. Alexander who referred Plaintiff to Dr. Davis in July 2003, and Plaintiff presented to Dr. Davis on August 21, 2003 with complaints of low energy, poor sleep, some compulsive behavior, and seeing things such as spiders. Dr. Davis noted "obsessive compulsive personality" on his notes and assessed Plaintiff with generalized anxiety disorder. He prescribed Risperdal (an anti-psychotic medication) as well as Klonopin (which treats panic disorders and is also

5



prescribed as a sleep aid), with a notation that Plaintiff was to be "weaned off of [unintelligible]"[3] over a two month period. (R.p. 134).

On September 4, 2003, Plaintiff underwent a psychological evaluation by Dr. Al Harley. While Plaintiff related many complaints to Dr. Harley, she also noted that she had "never been hospitalized psychiatrically." Dr. Harley initially noted that there was no evidence of false perceptions such as auditory or visual hallucinations, but that Plaintiff later "change[d] that and states that when she closes her eyes at night she sees things." Dr. Harley assessed Plaintiff with an adjustment disorder with mixed features of anxiety and depression, and assigned her a current GAF of 45.[4] (R.pp. 122-124). During a visit to Dr. Davis the following month, he also assigned Plaintiff a GAF score in the 40-45 range. (R.p. 133).

On October 7, 2003, Plaintiff's medical records were reviewed by state agency psychological consultant Dr. Samuel Goots, who opined after this review that Plaintiff was not significantly limited in her ability to remember locations and worklike procedures, to understand and remember very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted, to make simple work related decisions and complete a normal work day and work week without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact

---

[3] Apparently Paxil.

[4] "Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).



appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others.  Dr. Goots assessed Plaintiff as being moderately limited in her ability to carry out detailed instructions and to maintain attention and concentration for extended periods, and to sustain an ordinary routine without special supervision. (R.pp. 245-246). When rating her functional limitations, Dr. Goots opined that Plaintiff would have no episodes of decompensation of an extended duration, that she had mild restrictions in her activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R.p. 259).

A second state agency psychologist, Dr. Jeffrey Vidic, reviewed Plaintiff's records on February 6, 2004 and opined that Plaintiff had the same degree of functional limitations as had been earlier found by Dr. Goots.  (R.p. 229; *cf.* R.p. 259).

By March 18, 2004, Dr. Davis had upgraded Plaintiff's GAF score to between 50 and 55.[5] (R.p. 129).  On June 24, 2004, Dr. Davis prepared a "psychiatric attending physician's statement of disability" in which he assigned Plaintiff a GAF score of 50 and noted that Plaintiff had self-reported symptoms of sleep disturbance, crying spells, excessive worrying and poor concentration, among other symptoms. He noted that Plaintiff came to him for treatment "every three or four months".  Dr. Davis opined that Plaintiff was only moderately impaired in her attention and ability

---

[5]A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



to maintain concentration, but then stated that Plaintiff was "unable to work". (R.pp. 126-127). Dr. Davis subsequently wrote a letter to Plaintiff's attorney on January 28, 2005, stating therein that Plaintiff suffers from generalized anxiety disorder with obsessive insecurity and panic type feelings, that her prognosis was poor, and that he considered her "totally disabled from any type of work." (R.p. 125).

However, by March 2005, Dr. Davis was assigning Plaintiff a GAF score of 60, barely within the range of even moderate symptoms being present. (R.p. 264). In September 2005, Dr. Davis prepared a medical source statement (mental) in which he indicated that Plaintiff had a fair ability (defined as ability to function being limited, but satisfactory) to follow work rules, but poor (defined as being seriously limited, but not precluded) ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, and maintain attention/concentration. He also opined that Plaintiff had a fair ability to perform simple job instructions and maintain her personal appearance, but only a poor ability to perform complex or detailed job instructions and to behave in an emotionally stable manner, demonstrate reliability, or relate predictably in social situations. (R.pp. 270-272).

After review of these medical records and consideration of Plaintiff's objective testimony; see (R.pp. 18-19); the ALJ found and concluded that Plaintiff retained the residual functional capacity to perform medium work with no more than occasional stooping, twisting, crouching, kneeling and climbing of stairs or ramps; and no climbing of ladders or scaffolds. Specifically with respect to Plaintiff's mental impairment, the ALJ determined that Plaintiff's anxiety disorder resulted in no more than mild restrictions in her activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace



on complex tasks and detailed instructions, but that she should be able to attend to and perform simple tasks throughout the work day for at least two hours at a time with normal work breaks and without special supervision. He found no evidence of repeated episodes of decompensation of extended duration.  The ALJ determined the effect of these limitations was to further restrict Plaintiff's residual functional capacity to the performance of simple, routine work in a supervised low stress environment involving no interaction with the public or "team" - type interaction with co-workers. (R.p. 19).  See also (R.pp. 21-22, Finding No. 7).  *Cf.*  Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress].

        The records and opinions of Plaintiff's treating (other than Dr. Davis) and examining physicians discussed hereinabove provide substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].  The ALJ could also properly  consider the records and findings of Nurse McIver in reaching his decision. See

9



20 C.F.R. § 404.1513(d).

Although Dr. Davis opined that Plaintiff was unable to work, the ultimate issue of disability is reserved to the Commissioner. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]. As previously noted, the ALJ found that Dr. Davis' notes do not support the degree of limitation opined to by Dr. Davis, and that his opinion appeared to be based on Plaintiff's subjective complaints, resulting in the ALJ giving Davis' opinion little weight. (R.p. 18). In light of this finding, and in further consideration of the other medical evidence in the case, the ALJ determined that Plaintiff's impairments were not as severe as she alleged. This was a proper function for the ALJ to perform, and the undersigned does not find any reversible error in his decision. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; cf. Weetman v. Sullivan, 877 F.2d 20 (9th Cir. 1989) [Affirming denial of disability where Plaintiff complained of trigeminal neuralgia: ALJ was not bound by claimant's subjective complaints of pain or opinion of disability from claimant's physician in the absence of objective evidence and where opinion was inconsistent with medical notes]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an



inference that he was not disabled]; see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.].

Finally, the record reflects that the ALJ obtained vocational expert testimony at the hearing, wherein the vocational expert was proffered a hypothetical which reflected the residual functional capacity found to exist by the ALJ. (R.p. 290). In response to this hypothetical, the VE identified several jobs that Plaintiff could perform with her limitations, considering her age and educational background. (R.pp. 290-291). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.



Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 18, 2007

